**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| JANE DOE, | § | |
| | § | |
| **Plaintiff** | § | |
| | § | **C.A. NO. 3:20-cv-02584-N** |
| **v.** | § | |
| | § | **JURY DEMANDED** |
| SOUTHERN METHODIST | § | |
| UNIVERSITY, | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND**

COMES NOW, Plaintiff Jane Doe (hereinafter "Plaintiff") files this Fist Amended Complaint (hereinafter "FIRST AMENDED Complaint") and Jury Demand complaining of Southern Methodist University (hereinafter "SMU" or "Defendant University"). In support thereof, Plaintiff would respectfully show the Court as follows:

**I.
PARTIES**

1.     Plaintiff Jane Doe[1] is a cisgender female individual who, at the time of the sexual assault complained of herein, was a student attending Southern Methodist University.

2.     Defendant Southern Methodist University is a private educational institution with its campus located in Dallas, Dallas County, Texas. No service is needed at this time.

---

[1] "Jane Doe" has been substituted for Plaintiff's name for all causes of action brought through this Complaint which would otherwise publish important privacy interests of all parties. Plaintiff fears for her personal safety, as well as that of her family and friends as a result of this Complaint. Fairly applying this concern, the Complaint also identifies the perpetrator of rape as "Assailant." Finally, the Complaint does not use the Plaintiff's administrators' names but identifies them as "Administrator" or by their titles as opposed to naming the staff of Defendant University. Upon consultation with counsel for the Defendant, Plaintiff will file a Motion to Proceed with Fictitious Names.

**II.**
**JURISDICTION AND VENUE**

3.     The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since Defendant University resides or resided in this district and the events or omissions giving rise to the claim occurred in this district.

5.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

6.     Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein. This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, and the Fourth Amendment to the United States Constitution, made applicable to Defendants through the Fourteenth Amendment to the United States Constitution.

7.     Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under state law including breach of contract and negligence.

**III.**
**APPLICABLE LAW**

8.      Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 168l(a), states that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance .... "

9.      Title IX is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 106. 19. 34 C.F.R. § 106.8(b) which provides: " ... A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."

10.     In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of discrimination.

11.     In *Davis v. Monroe County Board. of Education*, 526 U.S. 629 (1999), the United States Supreme Court extended the private damages action recognized in *Gebser* to cases where the harasser is a student, rather than a teacher. *Davis* held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is: a) "deliberately indifferent to sexual harassment of which the recipient has actual knowledge," and b) "the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Davis*, 526 U.S. at 1669-76.

12.     Title IX jurisprudence as well as Department of Education regulations have long recognized that a single event of rape constitutes harassment so severe, pervasive and objectively

offensive that it deprives its victims of access to the educational opportunities provided by the school: "The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the harassment is physical. Indeed, a single or isolated incident of sexual harassment may create a hostile environment if the incident is sufficiently severe. For instance, a single instance of rape is sufficiently severe to create a hostile environment." U.S. Department of Education, Office of Civil Rights, "Dear Colleague" Letter of April 4, 2011.

13.     Regardless, in the circumstances giving rise to the claims of this Plaintiff, and others, a history of student harassment, resulting from deliberate indifference, has been allowed to continue at the Defendant University for many years.

14.     Texas law provides protections for students and requires the exercise of reasonable care on the part of the University.

15.     Texas law provides for the protection of invitees from foreseeable criminal harm.

16.     Texas law also provides for a cause of action of breach of contract. Plaintiff has an educational contract with the Defendant University that included agreements and duties to provide adequately for their safety, to adequately and in compliance with law report instance of sexual assault and/or harassment the breach of which cause the damages claimed herein

**IV.**
**<u>GENERAL ALLEGATIONS</u>**

17.     At all relevant times, SMU received federal funding for its academic programs and activities and was subject to the requirements of Title IX of the Education Amendments of 1972, 20 U.S.C. 1681(a) (hereinafter, "Title IX").

18.     The Defendant University implemented and executed policies and customs in regard to the events that resulted in the deprivation of Plaintiff's constitutional, statutory, and common-law rights.

19.     The Defendant University is responsible for providing the security of its students and guests which it does through "Public Safety," in effect a private police force.

20.     The Defendant University is responsible for ensuring that all of its employees are properly trained and supervised to perform their jobs.

21.     The Defendant University is responsible for the acts and omissions of its employees, agents, part-time student workers and tenants.

22.     The Defendant University received reports from Plaintiff concerning the rape she experienced while at the Defendant University.

23.     The Defendant University failed to adequately investigate the event Plaintiff reported in violation of Title IX.

24.     The Defendant University failed to investigate each the assault Plaintiff endured of which Defendant had either actual or constructive notice.

25.     Upon information and belief, the Defendant University failed to report the criminal acts involved in the reports it received from Plaintiff in violation of its obligations under the Clergy Act.

26.     At all times relevant to this Complaint, Defendant failed to protect Plaintiff, and others, as it negligently discharged its duty to provide safety to the students and guests of the University.

27.     Plaintiff was a student at SMU starting in August of 2018. Upon her arrival at SMU, Plaintiff became acquainted with her assailant, an SMU football player (hereinafter "Assailant,"

see fn. 1). Assailant is over 6'4 and weighs approximately 335 pounds, in addition to being a lineman for SMU.

28.      In August of 2019, Plaintiff was raped by Assailant. She promptly and bravely reported her assault to SMU in September of 2019.

29.      Plaintiff's sexual assault, like countless others, occurred during what has become known as a time of indifference by universities and Title IX officials in response to reports of assault. This has proven especially true where the rape is perpetuated by a football player or other athlete during a time of growth for the program.

30.      Additionally, Plaintiff's sexual assault, like countless others, resulted in a startling absence of consequences to her assailant, and little to no comfort or support to Plaintiff.

31.      Prior to Plaintiff's arrival at SMU, SMU officials permitted a campus condition rife with sexual assault and completely lacking the basic standards of support for victims as required by federal and state law. This case arises from SMU's deliberately indifferent response Plaintiff's report of student-on-student sexual assault.

32.      After a belabored, opaque, and inconclusive Title IX process, Plaintiff was informed that her report resulted in a finding by SMU's Title IX officials of "insufficient evidence."

33.      The finding of "insufficient evidence" was irresponsible and unconscionable. Beyond reaching the incorrect outcome, SMU violated Plaintiff's due process rights and negligently administered its own policies and procedures throughout the Title IX process. For example, and without limitation:

  a.      SMU failed to provide "interim measures," to Plaintiff including but not limited to SMU's failure to provide any reasonable or agreeable option whereby Plaintiff was not forced to live with and see her assaulter repeatedly. Plaintiff put SMU on notice

by requesting interim measures, which were declined. No other interim measures were suggested or provided.

b.      SMU failed to provide Plaintiff with an appropriate reporting mechanism, and only allowed access to a male Title IX investigator who ultimately communicated the judgment of the University to Plaintiff, further undermining her legitimate report of assault.

c.      SMU failed to keep Plaintiff informed of the investigation, outcome, and sanction of her case, despite its own procedure noting that the parties have the right to be informed of the "outcome and sanction of cases involving sexual assault."

d.      SMU failed to conduct a thorough and appropriate Title IX investigation; belied by its refusal to provide witness statements or even describe the nature of the "inconsistent information" provided by other witnesses. SMU also failed to give Plaintiff any opportunity to review the gathered information before a final decision and respond, or to provide additional information. Plaintiff's listed witnesses further corroborated her report; again, demonstrating that the investigation was not thorough, nor did it accurately depict the facts.

e.      SMU violated its own Title IX policy. For example, and without limitation, SMU failed to give Plaintiff an opportunity to review SMU's report and/or present information or evidence and failed to administer its own judgment within 60 days.

f.      SMU failed to timely reach said judgment/decision; failed to allow Plaintiff appropriate time to appeal the Title IX decision; and failed to reasonably accommodate Plaintiff following its administration and report of its final judgment.

34.     SMU's failure to promptly and appropriately investigate and respond to the assault allowed a condition to be created that substantially increased Plaintiff's chances of being sexually assaulted, as well as others.

35.     Further, SMU's failure to promptly and appropriately investigate and respond to Plaintiff's assault led to retaliation against Plaintiff. SMU's failures enabled and emboldened Plaintiff's rapist to retaliate against her in a number of ways, including but not limited to via multiple instances of defacing Plaintiff's property, and multiple instances of online bullying. After Plaintiff's timely and courageous report of her rape, Plaintiff vehicle was spat on and defaced. Further, Plaintiff received threatening, distracting, and bullying messages via Instagram and online platforms.

36.     Plaintiff immediately reported said retaliation, and SMU again failed to promptly and appropriately investigate and respond in keeping with their own Title IX policies. SMU's failures to address the retaliation Plaintiff experienced after reporting her assault demonstrate SMU's continued and blatant disregard for student safety. Perhaps most egregiously, SMU made no effort to even enforce the no-contact order between Plaintiff and her rapist.

37.     SMU's deliberate indifference to Plaintiff's report, both before the fact and after the fact of reporting, subjected Plaintiff to further actionable harassment. Specifically, and by example, Plaintiff was subjected to online sexual harassment and bullying, and physical harassment and intimidation when her car was spat on and defaced on campus. All of these events were reported to SMU, and SMU continued to exhibit deliberate indifference in its lack of resources, protection, or proper adjudication offered to Plaintiff.

38.     The further actionable harassment which Plaintiff suffered was unquestionably based on her sex. As a female student, Plaintiff was not offered or afforded the same resources that male students; namely, her assaulter, were provided by the University. In fact, it was suggested Plaintiff move out of her student housing rather than appropriately relocate Plaintiff's (male) harasser.

39.     As a direct and proximate result of the harassing educational environment created by SMU's deliberately indifferent response to the sexual assault and subsequent harassment of Plaintiff, as well as violations of her state and federal legal rights, Plaintiff has suffered and continues to suffer untold psychological damage, profound emotional distress, permanent loss of standing in her community and damage to her reputations, and her future relationships have been negatively affected.

40.     Plaintiff has also been deprived of meaningful treatment, including medical and psychological support, as a result of SMU's conduct and the resulting medical environment which they caused.

41.     Plaintiff has also been deprived of a normal college education due to SMU's conduct and the resulting educational environment which SMU caused.

42.     Plaintiff has also been damaged by missed educational opportunities. Also, her future earning capabilities have been damaged by SMU's conduct and the resulting hostile educational environment which SMU caused.

43.     Moreover, SMU's failure to promptly and appropriately investigate and respond to assaults such as Plaintiff's furthers sexual harassment and a hostile environment and perpetuates the rape culture which resulted in Plaintiff's pain, anguish, and damages.

44.     SMU's failure to promptly and appropriately investigate and respond to Plaintiff's specific report resulted in damages to Plaintiff, including mental and physical pain and anguish, past and future.

45.     Finally, SMU's failures to promptly and appropriately administer its own Title IX procedures effectively denied Plaintiff, and other female students, access to educational opportunities. Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX.

**V.**
**CONTEXT OF SMU'S FOOTBALL PROGRAM**

46.     SMU football received the NCAA's infamous "death penalty" on February 25, 1987, effectively closing the football program down. Because of the death penalty, SMU lost its place at the table as a major college football program and was left behind when the Big 12 formed in 1996.

47.     In the following 20 years, the Mustangs have failed to secure a seat at the profitable football conferences. SMU football has now been through three Group of Five conferences (Western Athletic, Conference USA, American), thus missing out on the riches of the BCS and College Football Playoffs.

48.     SMU has posted only three winning seasons since receiving the death penalty from the NCAA. It is safe to say that SMU's long-sought recovery has been decades in the making, but only arrived within the past two years.

49.     In 2017, SMU hired Daniel "Sonny" Dykes as head football coach. Dykes was brought to SMU specifically to recover the program. After achieving a 5-7 record in 2018, Dykes coached SMU to a 10-win season in 2019. Notably, this marked the program's most wins in a season since 1984.  The Mustangs started the season 8–0, their first 8–0 start to a season since 1982.

50.     As a result of this sudden success, SMU football players themselves became larger-than-life celebrities on campus, as SMU football consumed the campus to a degree not seen in decades. SMU, in turn, is maximizing its football public relations machine. As a result, daily life for SMU students is dominated by football, and football players are often given special treatment by administration and faculty.

51.     SMU's recent football success was a controlling or contributing factor to SMU's Title IX official's misadministration of the Title IX investigation into an assault committed by one of its football players. Further, SMU's lack of any kind of disciplinary action against a football player in the wake of  a credible report of assault belies SMU officials' priorities in investigating instances of sexual assault on SMU's campus.

## VI.
## SMU CONTROLLED THE CONTEXT OF THE RAPE

52.    SMU had both notice and control over the context of the violence perpetrated by its football player.

53.    The football player who raped Plaintiff was recruited and brought to SMU specifically to play football. Upon information and belief, the assailants would not have been in Dallas but for SMU's recruiting and scholarship to play football at SMU

54.    Upon information and belief, the SMU athletic department would coordinate housing for the football players, which was the dormitory and/or location where Plaintiff's rape occurred.

55.    When necessary, the SMU athletic department would manage the housing assignments of SMU football players and require specific housing changes or restrictions.

## VII.
## PLAINTIFF'S RAPE AND SUBSEQUENT REPORT

56.    On the night of Saturday, August 24, 2019, Plaintiff attended a party with friends, and then returned to her dorm alone. Shortly thereafter, Assailant messaged Plaintiff that he "wanted to hookup tonight." Plaintiff declined and clearly stated that she did not want to engage in a "hookup" or have sex with Assailant.

57.    Thereafter, Plaintiff Face-timed a close friend and confided that she did not want to have sex with Assailant. Shortly after the call ended, Assailant arrived at Plaintiff's room uninvited.

58.    Upon entering Plaintiff's room, Assailant immediately took off his pants. Plaintiff asked what he was doing.  Assailant proceeded to push Plaintiff onto her bed and say, "you know why I'm here." Plaintiff again clearly and explicitly told Assailant she did not want to have sexual

intercourse with Assailant. Plaintiff was in fear for her life as Assailant is well over 6 feet, weighs

over 330 pounds, and was an experienced and conditioned athlete as a football player for SMU.

59.     Assailant proceeded to push Plaintiff down. Plaintiff again clearly stated that she

did not want to have sex with Assailant, explaining further that she was on her period in an attempt

to stop the rape. Assailant ignored Plaintiff's clearly nonconsensual statements, continued to force

himself onto Plaintiff, and raped her.

60.     The following morning and thereafter, Plaintiff feared being confronted by

Assailant or his teammates, especially because Assailant lived in Plaintiff's own student housing.

61.     Following the sexual assault, Plaintiff did not want another student such as herself

to be raped by Assailant. Plaintiff voluntarily reached out to the Title IX office to bravely report

her assault.

62.     Following the submission of Plaintiff's written statement reporting her assault,

SMU repeatedly obscured and delayed the administration of the Title IX investigation, offering

Plaintiff virtually no support or resources.

**VIII.**
**SMU SUBJECTS PLAINTIFF TO A CONTINUING HOSTILE ENVIRONMENT**

63.     Following the August 2019 sexual assault, Plaintiff continued to feel the sexually

hostile effects of SMU's policies, or lack of administration thereof, for the remainder of her time

at SMU.

64.     Plaintiff was forced to face her assailant around campus, in the classroom and in

her living situation, as SMU declined to remove Plaintiff's rapist from its institution or even

Plaintiff's own student housing.

65.     The result of SMU's continued sexually hostile and discriminatory policies combined with Plaintiff being required to live in the same location as her rapist created a highly hostile educational environment for Plaintiff on a daily basis.

66.     Throughout this entire period of time, SMU was clearly on notice of the report that one of their female students, Plaintiff, was raped by an SMU football player.

67.     As a result, SMU had control over both the offender as well as the student housing situation and had the ability to address its effects and prevent a rape recurrence. Yet, SMU did nothing.

**IX.**
**SMU'S RESPONSE AND POLICIES**

**A.     SMU's Response**

68.     On or about September 10, 2019, Plaintiff contacted SMU to report her rape. Plaintiff received a response on or about September 10, 2019 from the Title IX/Equal Opportunity Investigator and Title IX Coordinator advising her of her rights and setting a time to meet.

69.     Plaintiff attended an in-person meeting on or about September 12, 2019, wherein she reported the details of her rape directly to a male SMU administrator, who was also the Title IX investigator. Notably, Plaintiff was alone in a room with only the male Title IX investigator, and no other witnesses or persons, at the time of reporting her rape. She then submitted her official final statement at the request of the Title IX/Equal Opportunity Investigator and Title IX Coordinator on or about September 18, 2019.

70.     No assistance or support was provided to Plaintiff beyond an emailed list of resources from the Title IX/Equal Opportunity Investigator and Title IX Coordinator. Plaintiff was not offered any interim measures, support, counseling, or living arrangements despite the nature of the assault and Plaintiff's proximity to her assailant. SMU refused to move the perpetrator,

which would have been an easy accommodation or interim measure that SMU failed to do. SMU, via its employees/administrators, only offered to have Plaintiff removed and/or transferred from her own accommodations.

71.     Plaintiff repeatedly had to inquire with the University to determine what actions could or should be taken by a victim of assault such as herself. Plaintiff's correspondence demonstrates her confusion, stating her relief that she had "found the right person." Plaintiff's prompt report and desire to find resources should be commended; however, her correspondence also makes clear that students in her situation are not given appropriate education and/or access to resources sufficient to respond to, much less prevent, instances of sexual assault. Plaintiff was re-victimized by this system following her prompt report of the Assault.

72.     Following her report on or about September 18, 2019, Plaintiff was left in the dark and required to initiate correspondence to receive further response from the University. Plaintiff's correspondence with SMU demonstrates that she reached out to inquire if she could be of further assistance, or if she needed to do anything further. Despite her openness, prompt report, and desire to protect fellow students, Plaintiff was not provided any information regarding her assailant's response or the University's investigation and prompt action in response to same.

73.     Plaintiff was further provided no reasonable accommodations, nor was it offered that her Assailant be relocated. Again, it was the suggestion of the University that she herself should move or transfer living accommodations.

74.     Despite SMU's own Title IX policy which states that investigations usually take 60 days, Plaintiff's investigation extended this time period by over a month, lasting in total over 100 days. It can be assumed that SMU's policy was written in keeping with the federal government's recommendation that investigations resolve within 60 days. Given that Plaintiff had little to no

involvement nor any information throughout the process, the Title IX process should never have taken this long. Notably, the extended investigation period concluded right around the end of football season, thus minimizing the chance that Plaintiff's report might adversely affect the perpetrator's, or SMU's, football season.

75.     Further, and even more notably, the perpetrator was not pulled off the roster or football team while the investigation was pending. This leads to an inference that SMU deliberately extended the investigation to avoid the risk of Plaintiff going public with her report, and to avoid the possibility that the perpetrator be found responsible during the football season. Finally, it leads to an inference that the report was not communicated or reported in any way to the Athletics program which Plaintiff's assailant was involved in as an SMU football player.

76.     Plaintiff was advised that a judgment would be finalized and delivered to her by Wednesday, November 20th, 2019. When no judgment was forthcoming, an anxious Plaintiff was forced to again contact SMU's offices to inquire whether a resolution had been reached. She spent an excruciating 24 hours waiting for the judgment of the University, which did not come until Thursday, November 21st, 2019. Despite this delay, and the length of the investigation as a whole, Plaintiff's request for an extension for her appeal due to the upcoming Thanksgiving holiday and impending finals schedule was promptly denied.

77.     Plaintiff's report to SMU, which recounts details of a disturbing and explicit sexual assault by an SMU football player, was dismissed by the University for "insufficient evidence" in the judgment issued on November 21, 2019.

78.     The judgment further stated that there was "contradictory testimony" to Plaintiff's statement. This is the case in 100% of sexual assault cases and is an improper basis upon which to

base a dismissal. The proceeding should have, at a minimum, included findings of fact and recorded statements.

79.     Plaintiff was not offered the opportunity to review any contradictory statements, nor refute them. The only information provided to Plaintiff was that "two witnesses" provided information inconsistent with her account. She was not provided further information regarding the alleged inconsistencies, and therefore had no opportunity to rebut or further appeal this alleged information.

80.     Despite the fact that Plaintiff offered evidence and witness corroboration to substantiate her allegations against Assailant, no action was taken against him by the University. Notably, he continues to perform well for SMU's football program. Upon information and belief, no further action was taken against SMU as a result of Plaintiff's courageous and timely report.

81.     SMU's response, or lack thereof, to Plaintiff's rape is unconscionable. In sum, SMU declined to take any action in the wake of Plaintiff's report of rape.

82.     Thus, SMU's own response established that it did not adhere to or administer its own policies appropriately, and further, that the policies as set forth below perpetuated a rape culture and caused and exacerbated Plaintiff's damages.

**B.     SMU'S POLICIES**

83.     SMU violated its own Title IX policies, including without limitation by violating the following: 1) SMU violated its policy of providing interim protective steps for complainants; 2) SMU violated its policy of extending for a reasonably period any of the deadlines set forth by its own policies; and  3) SMU violated its policy of taking approximately 60 days for the investigation following the receipt of the completed Title IX Complaint Form.

84.     In addition to violating SMU's own Title IX policies, SMU further demonstrated the following policies which are not in keeping with federal law, and which served to exacerbate Plaintiff's rape and cause her additional damages.

## C.     POLICY OF NO OR LITTLE DISCIPLINE

85.     Despite Plaintiff's credible report of rape, SMU chose not to use any disciplinary action whatsoever in regard to Plaintiff's rapist.

## D.     POLICY OF INTERFERENCE WITH FEMALE STUDENTS' ACCESS TO HELP

86.     Upon information and belief, SMU conducted its own untrained internal inquiries, which improperly discredited the Plaintiff/Title IX complainant and denied her the right to a fair, impartial and informed investigation, interim measures or processes promised to them under SMU's own policy. In fact, the internal steps provided by SMU and the timeline that it alone controlled gave the illusion of responsiveness to Plaintiff but failed to provide a meaningful institutional response under Title IX.

## E.     POLICY OF NOT EDUCATING STAFF/STUDENTS

87.     SMU failed to train students and staff about Title IX.  Plaintiff and likely other women on campus have no idea what resources were available to them and were/are unaware of Title IX or how SMU's Title IX office could help. Only after conducting her own careful research was Plaintiff able to navigate the system to seek assistance which she did not end up getting. Even after researching, Plaintiff struggled to find "the right person" to report her rape to, which is clear from her correspondence with SMU's Title IX officials. SMU thus wholly failed to provide training and education to Plaintiff and students like her; failed to identify and  train  responsible employees  under  Title  IX;  failed  to  provide  clear information about reporting options and

resources on campus; and failed to have a centralized process for ensuring that all reports reached the Title IX Coordinator.

**F.     POLICY OF NOT RESPONDING TO REPORTS OF RETALIATION**.

88.     SMU failed to provide any meaningful response under its own Title IX policies, which require protection from retaliation in instances such as Plaintiff's, where an assault has been reported. Plaintiff has and did experience retaliation and intimidation, and SMU made no investigation, interim measures, or processes as promised under its own policy. Further, SMU did not direct Plaintiff to any resources (such as campus security or services that could have escorted Plaintiff to class) for her safety and wellbeing. Finally, SMU did not even attempt to re-enforce or re-instruct Plaintiff's rapist regarding the no-contact order. No disciplinary measures were taken whatsoever.

**X.**
**SMU'S DUTIES**

89.     As a University seeking to educate students and profit from that relationship, SMU owed Plaintiff a duty of reasonable care. Reasonable care is the degree of caution and concern for the safety of students that an ordinarily prudent and rational University may apply in the same circumstances. Sadly, universities seek to evade this standard rather than adhere to any degree of reasonableness when it comes to the safety of students.

90.     More specifically, SMU had a duty to act as a reasonable university and apply a reasonable degree of care in hiring, training, and supervising employees and faculty that interact with students throughout the Title IX process; and/or that apply and enact the University's own policies and procedures.

91.     Finally, SMU possessed superior knowledge of the risks to Plaintiff, and had the ability to control its employees (who tolerated Plaintiff's sexual assault by a football player) and its player (who could have been disciplined under SMU's sexual misconduct policies).

92.     In sum, SMU can and did have a duty to Plaintiff, as well as other students, outside of the existence of a "special relationship." Plaintiff can establish duties owed, as well as violations of said duties, which are not dependent on the existence of a special relationship.

93.     SMU breached its duties to Plaintiff in multiple ways, including by:

    a.     Failing to properly and/or adequately hire, train, and supervise employees and faculty as to proper methods of dealing with reports of sexual abuse, and investigate same and accommodate victims in a manner that would permit them without undue hindrance, to complete their higher education;

    b.     Failing to properly and timely report incidents or claims of sexual assault;

    c.     Failing to provide adequate counseling and assistance to victims of sexual assault;

    d.     Failing to adequately monitor and supervise departments, including athletic departments, to ensure compliance with protections and standards for sexual assault prevention, reporting, and investigation;

    e.     Failing to discover, develop, and/or implement basic safeguards designed to prevent and/or minimize incidents of sexual assault;

    f.     Failing to investigate and/or monitor persons accused of sexual assault to ensure additional events and/or harassment of victims did not occur;

    g.     Failing to adopt and implement adequate safeguards to prevent known sexual harassment occurring on campus;

    h.     Failing to provide adequate staff, with proper training, to counsel and assist victims of sexual assault;

    i.      Tolerating sexual assailants on campus despite reports to the highest levels of their identities; and despite reports that they continue to bully and/or harass their victims online and/or in person;

    j.     Failing to adopt education programs to promote awareness of rape, acquaintance rape, and other sex crimes;

k.  Failing to adopt and enforce institutional sanctions for sex offenses, both forcible and non-forcible;

l.  Failing to adopt and enforce procedures students should follow if they become sexual assault victims, including who should be contacted, the importance of retaining evidence, and to whom the offense should be reported;

m.  Failing to inform victims that they have the option of reporting the sexual assault to law enforcement authorities and that they will receive assistance from the institution in the process;

n.  Failing to notify sexual assault victims about counseling services and options for changing academic schedules and living arrangements in the wake of a sexual assault;

o.  Failing to put in place an accurate routine procedure to notify the campus community about serious criminal activity that is likely to be a threat to students and employees;

p.  Failing to adopt and periodically review procedures to make sure they are adequate to address complaints of serious sexual misconduct;

q.  Failing to develop a clear policy about which kinds of sexual offenses will be handled internally and which will be turned over to the criminal authorities;

r.  Failing to make the goal of protecting the campus community from sexual assaults and harassment an integral part of the institution's day-to-day mission; and

s.  Failed to implement anti-retaliation policies for reporting, and/or failed to act on those policies when evidence of retaliatory conduct was uncovered.

94.  The above breaches of Defendant SMU's duties of reasonable care, which flow to all students including Plaintiff, were the proximate cause of substantial injury and damage to Plaintiff, as more specifically described herein.

95.  These damages include, without limitation, great pain of body and mind, physical injury, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; which Plaintiff has suffered and continues to suffer spiritually. Plaintiff was prevented and will continue to be

prevented from performing her daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## XI.
## CAUSES OF ACTION

**A.    COUNT 1: DISCRIMINATION UNDER TITLE IX: SEXUALLY HOSTILE CULTURE (Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a))**

96.    Plaintiff incorporates by reference all preceding facts and allegations set forth above in Paragraphs 1 through 95.

97.    SMU was deliberately indifferent to a culture of sexual hostility and violence instituting and/or mis-administering the policies cited herein, including without limitation:

- Violating its own policies set forth under Title IX;

- Policy of no or little discipline;

- Policy of interference with female students' access to help;

- Policy of not educating staff/students.

98.    SMU's sexually hostile policies and practices were a proximate cause of Plaintiff being subjected to multiple semesters of sexual harassment in the form of (1) a hostile educational environment, and (2) ongoing pain, mental anguish, and harassment by forcing her to interact and share a housing facility with her assailant.

99.    The mental pain and anguish that Plaintiff suffered was so severe, pervasive, and objectively offensive that it effectively barred her access to educational opportunities and benefits.

100.     As a direct and proximate result of SMU's creation of and deliberate indifference to its sexually hostile educational environment, Plaintiff suffered damages and injuries for which SMU is liable.

**B.     COUNT 2: GENDER DISCRIMINATION UNDER TITLE IX: DELIBERATE INDIFFERENCE TO PLAINTIFF'S RAPE (Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a))**

101.     Plaintiff incorporates by reference all preceding facts and allegations set forth above in Paragraphs 1 through 100.

102.     SMU was on notice and aware of Plaintiff's rape as well as the identity of the football player assailant at numerous points in time.

103.     SMU deliberately chose not to fully investigate the football player, even after the rape of Plaintiff and her subsequent report.

104.     Such failure to investigate the assault, conduct any disciplinary hearings, or contact Plaintiff and offer any assistance or resources was clearly unreasonable.

105.     SMU's deliberate indifference to Plaintiff's rape exposed her to continued mental pain and anguish and sexual harassment which was so severe, pervasive, and objectively offensive that it effectively barred her access to meaningful educational opportunities and benefits including academics, athletic programs, and on-campus events and activities.

106.     As a direct and proximate result of SMU's deliberate indifference to Plaintiff's rape, Plaintiff suffered damages and injuries for which SMU is liable.

**C.     COUNT 3: TEXAS TORT LAW – NEGLIGENCE**

107.     SMU owed Plaintiff a duty of reasonable care. SMU breached their duty in multiple ways including:

   a.     Failing to proper hire, train and retain officers, staff and faculty as to proper methods to deal with reports of sexual abuse, investigate same and accommodate

victims in a manner that would permit them to without undue hindrance, and complete their higher education;

b.      Failing to properly and timely report incidents of sexual assault;

c.      Failing to provide adequate counseling and assistance to victims of sexual assault;

d.      Failing to adequately monitor and supervise departments, including athletic departments, to ensure compliance with protections and standards for sexual assault prevention, reporting and investigation;

e.      Failing to discover, develop and/or implement basic safeguards designed to prevent and/or minimize incidents of sexual assault;

f.      Failing to investigate and/or monitor persons accused of sexual assault to ensure additional events did not occur;

g.      Failing to adopt and implement adequate safeguards to prevent known sexual harassment occurring on campus;

h.      Failing to provide adequate staff, with proper training, to counsel and assist victims of sexual assault;

i.      Tolerating sexual assailants on campus despite reports to the highest levels of their identities;

j.      Failing to adopt education programs to promote awareness of rape, acquaintance rape, and other sex crimes;

k.      Failing to adopt and enforce institutional sanctions for sex offenses, both forcible and non-forcible;

l.      Failing to adopt and enforce procedures students should follow if they become sexual assault victims, including who should be contacted, the importance of retaining evidence, and to whom the offense should be reported;

m.      Failing to inform victims that they have the option of reporting the sexual assault to law enforcement authorities and that they will receive assistance from the institution in the process;

n.      Failing to notify sexual assault victims about counseling services and options for changing academic schedules and living arrangements in the wake of a sexual assault and address or protect against retaliation in the wake of reporting a sexual assault;

o.      Failing to put in place an accurate routine procedure to notify the campus community about serious criminal activity that is likely to be a threat to students and employees;

p.      Failing to adopt and periodically review procedures to make sure they are adequate to address complaints of serious sexual misconduct.

q.      Failing to develop a clear policy about which kinds of sexual offenses will be handled internally and which will be turned over to the criminal authorities; and

r.      Failing to make the goal of protecting the campus community from sexual assaults and harassment an integral part of the institution's day-to-day mission of providing a safe and secure learning and working environment.

108.    The above enumerated breaches of duties were the proximate cause of substantial injury and damage to Plaintiff, as more specifically described herein.

109.    These damages include, without limitation, great pain of mind and body, physical injury, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; which Plaintiff has suffered and continues to suffer spiritually. Plaintiff was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**D.      COUNT 3: TEXAS LAW – BREACH OF CONTRACT**

110.    Plaintiff had a valid, enforceable contract with SMU as an academic enrollee, and also as a resident living in on-campus housing.

111.    SMU breached this contract in failing to adequately warn Plaintiffs of the dangerous sexual assault conditions on campus that have been allowed to metastasize in light of non-existent investigation procedures and student support activities.

112.    SMU also breached this contract by failing to provide an adequately safe living and educational environment for Plaintiff, and by failing to maintain an adequately safe living and educational environment for Plaintiff after her reported rape.

113.    As a result of these breaches of contract, Plaintiff suffered damages which were foreseeable, and for which recovery is now requested.

## XII.
## REQUEST FOR PERMANENT INJUNCTION

114.    Plaintiff seeks a mandatory injunction ordering the Defendant to refrain from unlawful discrimination and/or retaliation, ordering Defendant to undertake and rectify any and all Title IX violations and/or inequities, ordering Defendant and its athletic department to refrain from creating and condoning a hostile sexual harassment and/or discrimination environment against individuals on the basis of sex by immediately ceasing deliberate indifference to sexual assaults; and cease interference with the disciplinary process in favor of students who were charged with sexual assault.

## XIII.
## ATTORNEYS FEES

115.    As a result of this action, Plaintiff has retained the undersigned to represent her in her claims against SMU Accordingly, Plaintiff seeks attorneys' fees incurred pursuant to Title IX.

116.    Plaintiff thus requests award of reasonable and necessary attorneys' fees for this action. *See, e.g.*, 42 U.S.C. §§ 1983 & 1988. Plaintiff also requests reasonable and necessary attorneys' fees for her breach of contract claim.

## XIV.
## JURY DEMAND

117.    Plaintiff asserts her right under the Seventh Amendment to the U.S. Constitution and in accordance with Federal Rule of Civil Procedure 38, respectfully demands a jury trial on all issues.

## XV.
## <u>RELIEF REQUESTED</u>

118.   For the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment against Defendant SMU consistent with the relief requested herein, and for any and all other relief to which Plaintiff may be justly entitled including actual damages, compensatory damages, nominal damages, punitive damages, court and litigation costs, expert fees, attorneys' fees, statutory interest, pre- and post-judgment interest, and injunctive relief.

Respectfully submitted,

**POTTS LAW FIRM, LLP**

By:___*/s/ Maryssa J. Simpson*_____

**TIMOTHY MICAH DORTCH**
State Bar No. 24044981
mdortch@potts-law.com
**MARYSSA J. SIMPSON**
State Bar No. 24088414
msimpson@potts-law.com
2911 Turtle Creek Blvd, Suite 1000
Dallas, Texas 75219
Tel: (214) 396-9429
Fax: (469) 217-8296

**MICHELLE SIMPSON TUEGEL**
State Bar No. 24075187
michelle@stfirm.com
3301 Elm St.
Dallas, Texas 75226
Tel: 214.774.9121
Fax: 214-614-9218

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon the following *via CM/ECF* pursuant to the Federal Rules of Civil Procedure on this 12th day of November 2020:

Kimberly F. Williams
kwilliams@lockelord.com
Robin G. Shaughnessy
rshaughnessy@lockelord.com
Locke Lord LLP
2200 Ross Avenue, Ste. 2800
Dallas, Texas 75201

*/s/ Maryssa J. Simpson*
**MARYSSA J. SIMPSON**