**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JANE DOE,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | **C.A. NO. 3:20-cv-02584-N** |
| **v.** | § | |
| | § | **JURY DEMANDED** |
| **SOUTHERN METHODIST** | § | |
| **UNIVERSITY,** | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT SOUTHERN METHODIST UNIVERSITY'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**TIMOTHY MICAH DORTCH**
State Bar No. 24044981
mdortch@potts-law.com
**MARYSSA J. SIMPSON**
State Bar No. 24088414
msimpson@potts-law.com
2911 Turtle Creek Blvd, Suite 1000
Dallas, Texas 75219
Tel: (214) 396-9429
Fax: (469) 217-8296

**MICHELLE SIMPSON TUEGEL**
State Bar No. 24075187
michelle@stfirm.com
3301 Elm St.
Dallas, Texas 75226
Tel: 214.774.9121
Fax: 214-614-9218

**ATTORNEYS FOR PLAINTIFF**

## TABLE OF CONTENTS

I.   INTRODUCTION AND ISSUES PRESENTED .................................................................. 1

II.  STANDARD FOR A RULE 12(B)(6) MOTION TO DISMISS ........................................... 2

III. PLAINTIFF SUFFICIENTLY STATES TITLE IX CLAIMS ............................................ 3

   A.   Plaintiff sufficiently states a Title IX claim because Plaintiff establishes
        "after-the-fact" deliberate indifference. ................................................................. 4

   B.   Plaintiff sufficiently states a Title IX claim because Plaintiff establishes
        "before-the-fact" deliberate indifference. .............................................................. 5

IV.  PLAINTIFF HAS ALLEGED VIABLE STATE LAW CLAIMS ..................................... 10

   A.   SMU Owed Extensive Duties to Plaintiff .............................................................. 10

        1.   SMU Owed Duties Under the Texas Multi-Factor Duty
             Assessment ................................................................................................. 10

        2.   The "No Duty To Aid" Rule Does Not Apply Since SMU Took
             Affirmative Actions That Increased the Likelihood That Plaintiff
             Would Be Raped ......................................................................................... 12

        3.   SMU Owes a Duty to Train its Employees Who Were Tasked With
             Responding to Sexual Assault Reports ...................................................... 14

        4.   Special Relationship .................................................................................. 14

   B.   Plaintiff's Breach of Contract Claim ................................................................... 15

V.   ALTERNATIVE MOTION FOR LEAVE TO AMEND .................................................. 16

VI.  CONCLUSION ............................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Allen v. A & T Transp. Co.*,
    79 S.W.3d 65, 70 (Tex.App.-Texarkana 2002, pet. denied) ............................................. 14

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009) ............................................................................................. 2

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570 (2007) ...................................................................................... 2, 9, 10

*Davis v. Monroe County Bd. of Ed.*,
    526 U.S. 629, 640-41 (1999) ................................................................................... 3, 4, 8

*Doe v. E. Haven Bd. of Educ.*,
    200 Fed. Appx. 46 (2d Cir. 2006) .................................................................................. 4

*Doe v. Oyster River Co-op. Sch. Dist.*,
    992 F. Supp. 467 (D.N.H. 1997) .................................................................................... 4

*Doe v. Sch. Admin. Dist. No. 19*,
    66 F. Supp. 2d 57 (D. Me. 1999) ................................................................................... 4

*Doe v. U. of Tennessee*,
    2016 WL 2595795 (M.D. Tenn. May 3, 2016) ............................................................. 6, 8

*Doe v. Univ. of Miss.*,
    2019 WL 238098, at *5 (S.D. Miss. Jan. 16, 2019) .......................................................... 9

*Franklin v. Gwinnett County Pub. Schools*,
    503 U.S. 60, 75 (1992) ................................................................................................. 3

*Gebser v. Lago Vista Indep. Sch. Dist.*,
    524 U.S. 274, 290 (1998) .......................................................................................... 4, 8

*Golden Spread Council, Inc. No 562 of Boy Scouts of America v. Akins*,
    926 S.W.2d 287, 289-290 (Tex. 1996) ............................................................... 11, 12, 13

*Hernandez v. Baylor Univ.*,
    274 F. Supp. 3d 602, 612 (W.D. Tex. 2017) ............................................................. 13, 14

*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. 167, 179 (2005) .......................................................................................... 2, 3

*Janga v. Colombrito*
    358 S.W.3d 403 (2011) ............................................................................................... 14

*Kelly v. Yale U.,*
  2003 WL 1563424 (D. Conn. Mar. 26, 2003) .................................................. 4

*King v. S. Methodist Univ.,*
  No. 3:14-CV-3391, 2015 WL 12723026, at *2 (N.D. Tex. Apr. 27, 2015) ...................... 4

*Lormand v. US Unwired, Inc.,*
  565 F.3d 228, 232 (5th Cir. 2009) ......................................................... 2

*North Haven Bd. of Educ. v. Bell*,
  456 U.S. 512, 521 (1982)................................................................... 2

*Otis Engineering Corp. v. Clark*
  668 S.W.2d 307, 309 (1983)............................................................... 12

*Patino v. Complete Tire, Inc.*,
  158 S.W.3d 655, 660 (Tex.App. - Dallas 2005) ............................................ 14

*Pederson v. La. State Univ.,*
  213 F.3d 858, 881 (5th Cir. 2000) ......................................................... 3

*Scheuer v. Rhodes*,
  416 U.S. 232, 236 (1974)................................................................. 10

*Simpson v. Univ,*
  500 F.3d 1170 (10th Cir.) .............................................................. 6, 8

*United States v. Price*,
  383 U.S. 787, 801 (1966)................................................................... 3

*Walker v. Beaumont Indep. Sch. Dist.,*
  938 F.3d 724, 735 (5th Cir. 2019) ......................................................... 2

*Williams v. Bd. of Regents of U. System of Georgia,*
  477 F.3d 1282 (11th Cir. 2007) ....................................................... 4, 5, 6

*Williams v. United Pentecostal Church Intern.,*
  115 S.W.3d 612 (Tex.App. - Beaumont 2013) ............................................... 11

<u>Statutes</u>
20 U.S.C. § 1681(a) ...................................................................... 3

Other Authorities

Cantor, David, Bonnie Fisher, Susan Chibnall, Reanna Townsend, et. al. Association of
    American Universities (AAU), *Report on the AAU Campus Climate Survey on
    Sexual Assault and Sexual Misconduct* (January 17, 2020)............................................. 11

*https://www.rainn.org/statistics/campus-sexual-violence* ........................................................... 11

Aslam, Michelle, "*Insufficient Evidence: Victims Accuse SMU of Mishandling Campus
    Sexual Assault*," SMU Daily Campus, Nov. 20, 2020,
    https://www.smudailycampus.com/news/insufficient-evidence-victims-accuse-
    smu-of-mishandling-campus-sexual-assault...................................................................... 7

Restatement (Second) of Torts § 302B ...................................................................................... 13

Rules

Fed. R. Civ. P. 8(a)(2).................................................................................................................. 2

Fed. R. Civ. P. 12(b)(6).......................................................................................................... 2, 9

Fed. R. Civ. P. 15(a)(2)............................................................................................................. 16

## I.    INTRODUCTION AND ISSUES PRESENTED

This case arises out of the rape of Plaintiff Jane Doe, a student at Southern Methodist University ("SMU" herein) by an SMU football player, while both were students at SMU.  Plaintiff Jane Doe has filed a First Amended Complaint at Dkt. 14 ("FAC"), alleging causes of action against Defendant SMU for Negligence and violation of Title IX of the Educational Amendments of 1972 ("Title IX").   In response to Plaintiff Jane Doe's FAC, Defendant SMU filed a Rule 12(b)(6) Motion to Dismiss Plaintiff's FAC at Dkt. 19 ("Motion to Dismiss").

Defendant's Motion presents the following issues: (1) Defendant claims that Plaintiff's FAC "fails to plead facts sufficient to state a legally cognizable claim for relief under Title IX," (2) Defendant claims that SMU was not "deliberately indifferent" to Plaintiff's report of sexual assault, and finally (3) Defendant claims that "no special relationship" exists between SMU and Plaintiff, and there is no authority to support Plaintiff's negligence claim. *See* Motion to Dismiss, generally.

As discussed in detail below, when read with the required liberality, the facts alleged, and all reasonable inferences drawn from Plaintiff's FAC support causes of action under Title IX. Further, these same facts and inferences support the imposition of several duties on Defendant to have taken reasonable action to prevent its student and football player from retaliating against Jane Doe. As such, the FAC establishes SMU's deliberate indifference to Plaintiff's sexual assault report, and sufficiently pleads legally viable claims which survive Defendant's 12(b)(6) Motion to Dismiss. Finally, to the extent this Court finds Plaintiff's theories of liability deficient, Plaintiff would request leave to amend to cure any deficiencies.

## II.        STANDARD FOR A RULE 12(B)(6) MOTION TO DISMISS

"It is axiomatic that a complaint should not be dismissed unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *McLain v. Real Est. Bd. of New Orleans, Inc.*, 444 U.S. 232, 246 (1980) *quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Further, "[m]otions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotations omitted).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff fails to satisfy Rule 8(a), the defendant may move to dismiss the plaintiff's claims for "failure to state a claim upon which relief may be granted." *Id.* 12(b)(6). To survive such a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* In reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to plaintiff. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

With respect to Title IX, the Supreme Court has recognized that, "[t]he statute is broadly worded." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 179 (2005). Hence, "[t]here is no doubt that 'if we are to give [Title IX] the scope that its origins dictate, we must accord it a sweep as broad as its language.' " *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982)

2

(quoting *United States v. Price*, 383 U.S. 787, 801 (1966)). Further, "[d]iscrimination is a term that covers a wide range of intentional unequal treatment; by using such a broad term, Congress gave the statute a broad reach." *Jackson*, 544 U.S. at 175 (internal quotations omitted.) "Congress enacted Title IX not only to prevent the use of federal dollars to support discriminatory practices, but also to provide individual citizens effective protection against those practices." *Jackson*, 544 U.S. at 180 (internal quotations omitted.) "Congress surely did not intend for federal moneys to be expended to support the intentional actions it sought by statute to proscribe." *Franklin v. Gwinnett County Pub. Schools*, 503 U.S. 60, 75 (1992).

### III.    PLAINTIFF SUFFICIENTLY STATES TITLE IX CLAIMS

Defendant seeks to dismiss Plaintiff's causes of action which seek damages under Title IX. Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a). Notably, to violate Title IX, a funding recipient need not have intended to violate Title IX but need only have intended to treat women differently. *Pederson v. La. State Univ.*, 213 F.3d 858, 881 (5th Cir. 2000). Under Title IX, a recipient of federal funds may be held liable "only for its own misconduct" and not the misconduct of third parties. *Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, 640-41 (1999).

In order for an educational institution to be held liable under Title IX, a plaintiff must prove: (1) the educational institution is the recipient of federal funding, (2) the institution acted with deliberate indifference, (3) to sexual harassment/assault of which they had actual knowledge, (4) that is so severe, pervasive and objectively offensive so as to deprive the victim of access to the educational opportunities and/or benefits provided by the school. *Davis* at 650. With respect

to deliberate indifference, it occurs when there is an "official decision by the recipient not to remedy the violation." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

Plaintiff's claims are best characterized as deliberate indifference "before the fact" and "after-the-fact." *See King v. S. Methodist Univ.*, No. 3:14-CV-3391, 2015 WL 12723026, at *2 (N.D. Tex. Apr. 27, 2015). Specifically, Plaintiff Jane Doe's FAC supports a finding of liability under Title IX based on (1) SMU's deliberate indifference after Plaintiff's rape (post-assault), (2) SMU's pre-assault deliberate indifference to sexual misconduct committed by its football players, and (3) SMU's general policy of indifference and intentional violation of Title IX.

**A.    Plaintiff sufficiently states a Title IX claim because Plaintiff establishes "after-the-fact" deliberate indifference.**

An institution acts with "deliberate indifference" when it's response to known sexual harassment or sexual assault is "...clearly unreasonable in light of the known circumstances." *Davis,* 526 U.S. at 648. Several courts have opined as to what conduct amounts to post-assault deliberate indifference. *See Kelly v. Yale U.*, 2003 WL 1563424 (D. Conn. Mar. 26, 2003) (finding deliberate indifference where school engaged in a prompt grievance procedure but **failed to provide reasonable accommodations** to the victim); *Williams v. Bd. of Regents of Univ. Sys. of Georgia,* 477 F.3d 1282, 1297 (11th Cir. 2007) (recognizing **an eleven-month delay in concluding an investigatory process** was clearly unreasonable); *Doe v. E. Haven Bd. of Educ.*, 200 Fed. Appx. 46 (2d Cir. 2006) (recognizing that **a five-week delay in addressing report** of sexual assault supported a finding of deliberate indifference); *Doe v. Sch. Admin. Dist. No. 19*, 66 F. Supp. 2d 57 (D. Me. 1999); *Doe v. Oyster River Co-op. Sch. Dist.*, 992 F. Supp. 467 (D.N.H. 1997).

Similar to the above-cited cases, Plaintiff Jane Doe alleges that SMU delayed its judgment (FAC at ¶62, ¶74,   and ¶76), and failed to provide any reasonable accommodations to her, the

victim of sexual assault. (FAC at ¶73). Unlike these cases, here, Plaintiff Jane Doe actually alleges that SMU took *no* action in response to her report that she had been raped by an SMU football player. Plaintiff alleges that she sought reasonable accommodations, which were denied (FAC at ¶73). Even worse, when seeking reasonable accommodations, Plaintiff Jane Doe was informed that *she* could move out of her dorm/student housing, in lieu of her rapist being relocated. *Id.*

Finally, Plaintiff was not offered the opportunity to review any contradictory statements, nor refute them. (FAC at ¶79). The only information provided to Plaintiff was that "two witnesses" provided information inconsistent with her account. *Id.* She was not provided further information regarding the alleged inconsistencies, was not even provided the identities of said witnesses, and therefore had no opportunity to rebut or further appeal this alleged information. *Id.* Despite the fact that Plaintiff offered evidence and witness corroboration to substantiate her allegations against Assailant, no action was taken against him by the University. (FAC at ¶80). Notably, he continues to perform well for SMU's football program. *Id.* Upon information and belief, no further action was taken against SMU as a result of Plaintiff's courageous and timely report. *Id.*

Surely, affirmatively misrepresenting that it could take action, and actually taking no action, in response to Plaintiff's report that she had been raped is "clearly unreasonable" in light of any circumstances. Thus, Plaintiff's FAC supports a finding of liability under Title IX for SMU's post-assault response to Plaintiff's report that she was raped by another student and an SMU football player.

**B.    Plaintiff sufficiently states a Title IX claim because Plaintiff establishes "before-the-fact" deliberate indifference.**

Title IX liability can be based on institutional behavior that predates the sexual assault. *Williams v. Bd. of Regents of U. System of Georgia*, 477 F.3d 1282 (11th Cir. 2007); *Simpson v. U. of Colorado Boulder*, 500 F.3d 1170 (10th Cir. 2007). An educational

institution acts with deliberate indifference when it admits a student-athlete with knowledge of that athlete's prior sexual misconduct and fails to adequately supervise him. *Williams*, 477 F.3d. 1282. In *Williams*, the plaintiff was raped by several players on the University of Georgia's ("UGA") men's basketball team. *Id.* at 1288. One player, Tony Cole, was recruited by the basketball coach and admitted through a special admissions process, despite the coaching staff's knowledge that Cole engaged in sexual misconduct prior to attending UGA. *Id.* at 1296. The court held that UGA demonstrated deliberate indifference, prior to the plaintiff's sexual assault, in part, because it failed to adequately supervise Cole despite its knowledge of his past sexual misconduct. *Id.*

An educational institution also acts with deliberate indifference when it fails to adequately respond to a known problem of sexual violence within its football program. *Simpson v. Univ*, 500 F.3d 1170 (10th Cir.); *see also Doe v. U. of Tennessee*, 2016 WL 2595795 (M.D. Tenn. May 3, 2016). In *Simpson*, two female students were sexually assaulted by members of the school's football team, and non-student football recruits at an off-campus party. *Id.* at 1173. The court found a school's policies which have the effect to promote the possibility of sexual violence, their inaction in the face of knowledge that sexual violence is prevalent, and/or their inaction despite actual knowledge of sexual assaults that have occurred, amounts to deliberate indifference within the meaning of Title IX. *Id.* at 1184. The court also found the risk in *Simpson* was obvious because the school had general knowledge of the substantial risk of sexual assaults occurring during recruiting trips, the school specifically knew that sexual assaults had occurred during prior recruiting visits, and the school nevertheless maintained policies and procedures that proved ineffective and inadequate in deterring sexual violence during recruiting efforts. *Id.* at 1184.

Here, SMU violated Title IX based on its pre-assault conduct of maintaining Plaintiff's assailant as an unrestricted student in good standing, and by failing to respond adequately to a known problem of sexual misconduct by its football players. (FAC at ¶29-32).   Defendant contends that Plaintiff's "generalized, conclusory statements" regarding alleged reports of sexual assault are not enough to survive its Motion to Dismiss. However, Plaintiff is not required to bring evidence of these allegations at this stage. Plaintiff does have knowledge of other students at SMU whose sexual assault allegations/Title IX investigations have been mishandled, and other instances of sexual assault perpetrated by football players.  Plaintiff Jane Doe cannot control, nor does she purport to force other survivors of sexual assault (who have indeed reported to SMU, and also were not given reasonable accommodations) to come forward.[1] In fact, six SMU students recently came forward in an investigation by SMU's own student publication, *The Daily Campus,* to note their campus experiences of sexual assault. *Id.* at fn. 1. The students accuse SMU of not only mishandling their cases, but subjecting victims to a harsh and even traumatic process.

Notably, however, it is not what Plaintiff Jane Doe has knowledge of – but instead, what SMU has knowledge of, and responded to with deliberate indifference, that is at issue with respect to pre-assault indifference for purposes of claims under Title IX. Typically, Plaintiffs such as Jane Doe are only able to affirmatively prove instances of pre-assault indifference with the aid of discovery. In addition to broader University failings, discovery may also lead to evidence of specific failings within both the football program, the housing/student accommodation authorities, and the Athletics department leadership, including failures to identify and respond to patterns of

---

[1] *See* Michelle Aslam, "*Insufficient Evidence: Victims Accuse SMU of Mishandling Campus Sexual Assault,*" SMU Daily Campus, Nov. 20, 2020, https://www.smudailycampus.com/news/insufficient-evidence-victims-accuse-smu-of-mishandling-campus-sexual-assault.

sexual violence, and failures to provide appropriate accommodations (such as adequately safe housing).

As in *Simpson* and *U. of Tennessee*, here too, Plaintiff Jane Doe's allegations support a finding of deliberate indifference based on SMU's conduct prior to Plaintiff's rape. Plaintiff Jane Doe's allegations clearly evidence that SMU knew it had an up-and-coming football program (FAC ¶¶46-51) in which (1) football players were sexually assaulting females (FAC ¶¶52-55), (2) SMU's personnel failed to take any action to control, or otherwise prevent SMU football players and students from committing further sexual assaults (FAC ¶¶61-82), (4) football players were given preferential treatment with respect to disciplinary procedures (*Id.*). Therefore, Plaintiff has alleged sufficient facts to support a finding of Title IX liability based on SMU's pre-assault conduct.

**C.  SMU's Policy Of Indifference And Intentional Violation Of Title IX Support A Finding Of Liability Under Title IX**

An educational institution's intentional violation of Title IX can form the basis of liability under Title IX, even absent actual knowledge of and deliberate indifference to a specific report of sexual misconduct. *See Davis*, 526 U.S. at 642 (the actual notice requirement, "...is not a bar to liability where a funding recipient intentionally violates the statute"); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998) ("...in cases like this one *that do not involve official policy of the recipient entity*, we hold that a damages remedy will not lie under Title IX..." absent an institution's actual notice of sexual misconduct) (emphasis added).

At the time of the conduct alleged in Plaintiff's FAC, SMU exhibited a policy of indifference in responding to reports of sexual assault, harassment, or retaliation, generally. The FAC establishes that SMU wholly failed to provide training and education to Plaintiff and students like her; failed to identify and train responsible employees under Title IX; failed to provide

clear information about reporting options and resources on campus; and failed to have a centralized process for ensuring that all reports reached the Title IX Coordinator. (FAC ¶ 87).

In addition, Plaintiff alleged that (1) SMU had a policy of refusing to provide reasonable accommodations to female students who reported that they had been assaulted, (FAC ¶ 33, ¶ 73) and (2) SMU had a policy of not responding to reports of retaliation (FAC ¶ 88). The Court should indeed find it troubling that when SMU came into possession of new evidence, including evidence that Plaintiff's rapist was retaliating against and harassing her (FAC ¶ 35 – Plaintiff's vehicle was spat on and defaced, and Plaintiff received threatening and bullying messages via Instagram and online platforms), that SMU chose not to act – instead of investigating the claims and behavior of the assailant further in light of this new evidence. The inference of gender bias is further exacerbated by the fact that Plaintiff was never given access to interviews with the assailant, any evidence or testimony from other witnesses. (FAC ¶ 79-80).

Plaintiff alleged that this bias of SMU was apparent in not allowing her any opportunity to review the alleged contradictory statements/evidence, nor refute them. (*Id.* at FAC ¶ 79-80). *See Doe v. Univ. of Miss.*, 2019 WL 238098, at *5 (S.D. Miss. Jan. 16, 2019) (finding that Title XI Coordinator's lack of effort in compiling all the evidence, including exculpatory evidence, before expelling the plaintiff was enough in part to state a plausible claim of gender bias). Therefore, SMU is liable under Title IX, independent of its actions prior to and post Plaintiff Jane Doe's rape.

Finally, Plaintiff Jane Doe would re-urge the standard to be applied on a Motion to Dismiss. The Court's focus in a 12(b)(6) determination is not whether the plaintiff should prevail on the merits but rather whether the plaintiff has failed to state a claim. *Twombly*, 550 U.S. at 563 n.8 (holding "when a complaint adequately states a claim, it may not be dismissed based on a district

court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds) (finding the standard for a 12(b)(6) motion is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims").

Thus, taking Plaintiff's facts together and viewing them in the light most favorable to her, the allegations state a plausible claim under Title IX. Further, and in light of the facts alleged, further discovery is needed to ensure that Plaintiff's Title IX protections were complied with. While Defendant's claims might ultimately be re-urged on summary judgment, at this stage Plaintiff must only ""nudge[ her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## IV.   PLAINTIFF HAS ALLEGED VIABLE STATE LAW CLAIMS

SMU also moved to dismiss all of Plaintiff's state law claims. As demonstrated below, dismissal is not warranted.

### A.   SMU Owed Extensive Duties to Plaintiff

#### 1.   *SMU Owed Duties Under the Texas Multi-Factor Duty Assessment*

SMU's motion demonstrates a profound misunderstanding of the concept of duty by directly equating the existence of a duty with the existence of a special relationship. The two concepts are not identical. Plaintiff has established a host of duties owed by SMU which are not dependent on the existence of a special relationship. For example, under Texas law:

> [a]bsent a special relationship, the existence of a duty is a question of law for the court to determine from the particular facts of the case. [Citation.] In making that determination, we balance the risk, foreseeability and likelihood of injury, against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant. [Citation.] The foremost and dominant consideration of these factors is foreseeability of the risk--although it alone will not warrant imposing a duty.

*Williams v. United Pentecostal Church Intern.*, 115 S.W.3d 612 (Tex.App. - Beaumont 2013) (unreported); *see also Golden Spread Council, Inc. No 562 of Boy Scouts of America v. Akins*, 926 S.W.2d 287, 289-290 (Tex. 1996).

These factors favor the imposition of a duty. SMU was unquestionably aware of prior acts of sexual assault by other students and potentially members of the football program. Given this history, it was inevitable - let alone foreseeable - that a football player would sexually assault another student if SMU did not respond appropriately. Thus, the most important factor strongly favors the imposition of a duty. The related factors of risk and likelihood of injury similarly support the existence of a duty because given the history of sexual assault on college campuses, generally, the likelihood that another student would be raped if policies were not strictly adhered to was off the charts. Sexual violence on college campuses is pervasive. *See* https://www.rainn.org/statistics/campus-sexual-violence. Among undergraduate students, 26.4% of females and 6.8% of males experience rape or sexual assault through physical force, violence, or incapacitation.[2]

While SMU, on the whole, provides services that are valuable to the community, its football program does not carry the same utility and there is no value in protecting students who have habitually assaulted others. Guarding against this injury would not have resulted in a substantial burden. SMU was already subject to Title IX; it simply was not complying. SMU also has sexual misconduct policies but chose not to apply them to Plaintiff Jane Doe and her rapist. And, following Plaintiff's report, when Plaintiff requested reasonable accommodations, SMU refused. (FAC at ¶ 73.) When Plaintiff reported retaliatory actions and behavior by her assailant,

---

[2] David Cantor, Bonnie Fisher, Susan Chibnall, Reanna Townsend, et. al. Association of American Universities (AAU), **Report on the AAU Campus Climate Survey on Sexual Assault and Sexual Misconduct** (January 17, 2020).

SMU did nothing. (FAC at ¶ 35-36). Finally, SMU possessed superior knowledge of the risk and had the ability to control its employees (who tolerated sexual assault by football players), and its players (who could have been disciplined under its sexual misconduct policies.) These factors strongly support the imposition of duties upon SMU, to protect Plaintiff and other students like her.

### 2. The "No Duty To Aid" Rule Does Not Apply Since SMU Took Affirmative Actions That Increased the Likelihood That Plaintiff Would Be Raped

SMU argues that, absent a special relationship, it has no duty to "protect another from the criminal acts of a third person or to control their conduct." (Motion at p. 16.) But that rule is not applicable here. It is well-established that:

> [w]hile a person is generally under no legal duty to come to the aid of another in distress, he is under a duty to avoid any affirmative act which might worsen the situation. One who voluntarily enters an affirmative course of action affecting the interests of another is regarded as assuming a duty to act and must do so with reasonable care.

*Otis Engineering Corp. v. Clark,* 668 S.W.2d 307, 309 (1983) (citations omitted.) This principal was applied by the Supreme Court of Texas in a strongly analogous factual circumstance in *Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287 (Tex. 1996). Citing its earlier opinion in *Otis*, the court held that by introducing a suspected molester to the church who hired him, the council "could be found to have actually increased the risk and likelihood of injury in this case. *Id.* at 289. We have recognized that in some circumstances, at least, a person is under a duty to avoid such an affirmative act that may actually worsen a situation." *Id.* at 291.

Like *Akins*, this is not a case where SMU merely sat by and did not take action to protect a person in danger. Instead, SMU's affirmative acts with regard to Plaintiff's assailant made sexual assault, and the harassment Plaintiff suffered after her sexual assault, more likely. Undoubtedly, SMU entered into an affirmative course of action that placed the success of its

football program over the safety of its students. As in several cases stemming out of Baylor University, where Pepper Hamilton found that the special treatment afforded to football players accused of assault actually *increased the risk* of future sexual assaults by showing the players they were not subject to rules applicable to others, SMU increased the risk to Plaintiff here – specifically, by not even removing her rapist from her own student housing, and by not enforcing anti-retaliation policies and no-contact orders. *See Hernandez v. Baylor Univ.,* 274 F. Supp. 3d 602, 612 (W.D. Tex. 2017).

> The Court in *Hernandez* also cited to *Akins* – explaining further that:
>
> In evaluating the case, the Texas Supreme Court applied the multi-factor analysis to determine whether a duty might be imposed on the council. That analysis led the Court to conclude that the council did in fact owe a duty to the children and parents involved in the new troop….In doing so, it emphasized certain factors, "including whether one party has superior knowledge of the risk or the right to control the actor whose conduct caused the harm." *Id.* Ultimately, the Court found that the council's duty was best stated by "comment e to Section 302B of the *Restatement (Second) of Torts,* which recognizes that there may be liability '[w]here the actor has brought into contact or association with the other a person whom the actor knows or should know to be peculiarly likely to commit intentional misconduct, under circumstances which afford a peculiar opportunity or temptation for such misconduct.' " *Id.* (citing Restatement (Second) of Torts § 302B, cmt. e, ¶ D).

*Hernandez v. Baylor Univ.,* 274 F. Supp. 3d 602, 620 (W.D. Tex. 2017).

The Court in *Hernandez* elaborated that Baylor was likely to have had far more information about a football player's history of sexual assault than did the Plaintiff and other students. *Id.* at 621. The Court stated that Baylor also allegedly had some ability to control the alleged assailant, given the authority it had over him as a student and football player. *Id.* The Court therefore concluded that Plaintiff has plausibly alleged a claim for negligence against Baylor. *Id.* Similarly, here, SMU has far more information about assailant's history of sexual assault, and certainly has some ability to control and/or monitor his actions. As such, a claim for negligence is plausibly alleged by Plaintiff Jane Doe against SMU.

### 3.    *SMU Owes a Duty to Train its Employees Who Were Tasked With Responding to Sexual Assault Reports*

"An employer has a duty to adequately hire, train, and supervise employees." *Patino v. Complete Tire, Inc.*, 158 S.W.3d 655, 660 (Tex.App. - Dallas 2005), citing *Allen v. A & T Transp. Co.*, 79 S.W.3d 65, 70 (Tex.App.-Texarkana 2002, pet. denied). "The negligent performance of those duties may impose liability on an employer if the complainant's injuries result from the employer's failure to take reasonable precautions to protect the complainant from the misconduct of its employees." *Id.* SMU unquestionably delegated the responsibility of investigating and responding to allegations of sexual assault. Despite this, SMU did not train or educate its employees to carry out those duties competently. (FAC at ¶¶ 32, 35-36.) Defendant owed a duty to properly train its employees but failed to do so. SMU is also responsible for the negligence of its employees under the doctrine *of respondeat superior*, which allows for employer liability for its "employee's negligence in the scope of the employment." *Janga v. Colombrito*, 358 S.W.3d 403 (2011).

In the *Hernandez* case, the Court clarified that although there is no statutorily-imposed duty applicable, one may exist based on certain employees' (there, head football Coach Art Briles and former Baylor athletic director Ian McCaw) alleged knowledge and actions. The Court therefore concluded that Plaintiff had plausibly alleged negligence claims against Defendant. *Hernandez v. Baylor Univ.,* 274 F. Supp. at 622.

### 4.    *Special Relationship*

SMU focuses extensively on the absence of a special relationship between itself and Plaintiff. As discussed above, the existence or non-existence of a special relationship is largely a red-herring given the several other duties SMU owed in this case which are not dependent on the

14

existence of a special relationship. But, on a fundamental level, SMU's argument is misplaced on these facts.

Defendant argues that courts have moved away from a policy of making universities the insurers of their students' health and safety and are loathed to shift blame from rapists. But this is not a case, like those cited by Defendants, where the plaintiff relies solely on a threat of harm posed generally by all college students (though that harm is very real and should be taken seriously by universities who are paid to educate, serve, and by extension – protect their students). The policy underlying a duty assessment - and any common sense understanding of moral blame - changes dramatically in cases like this, where Plaintiff reports her sexual assault, is retaliated against for that report, and is not even given the barest of reasonable accommodations. (*See* FAC ¶35, ¶73). The law does not permit Defendant to tolerate the presence of a rapist and make Plaintiff suffer the consequences of reporting her rape, without repercussion to the Defendant.

SMU conveniently ignores other actions it could have taken, such as the football coach imposing a curfew on the Assailant as a condition of regaining eligibility, which may have prevented or at least discouraged further retaliation against Plaintiff. SMU also does not address the fact that SMU refused to even relocate Plaintiff's rapist – instead suggesting she herself could move. (FAC ¶73). For the reasons discussed above, SMU owed and breached substantial duties.

**B.      Plaintiff's Breach of Contract Claim**

Plaintiff concedes that her state law claim for breach of contract is valid only insofar as there may be a contractual agreement, such as for an athletic or academic scholarship, between Plaintiff and SMU. Plaintiff has had no opportunity to conduct discovery in this matter; however, should discovery reveal no such contract, Plaintiff will agree to dismiss her breach of contract claim against SMU. Plaintiff requests leave to amend her FAC to further elaborate on this claim

should any such contract exist. Plaintiff is willing to provide her FERPA release to obtain any such records.

## V.     ALTERNATIVE MOTION FOR LEAVE TO AMEND

Plaintiff requests the Court deny Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. However, in the alternative, Plaintiff requests leave to amend its complaint. *See* Fed. R. Civ. P. 15(a)(2).

## VI.     CONCLUSION

Plaintiff's allegations, and reasonable inferences drawn from them, support a conclusion that SMU had an official policy of indifference, and intentionally violated Title IX.

For the foregoing reasons, Plaintiff Jane Doe respectfully requests that this Court deny Defendants' Motion to Dismiss Plaintiff's First Amended Complaint in its entirety. In the alternative, Plaintiff would respectfully request leave to amend her First Amended Complaint.

Respectfully submitted,

**POTTS LAW FIRM, LLP**

By: ___*/s/ Maryssa J. Simpson*___
    **TIMOTHY MICAH DORTCH**
    State Bar No. 24044981
    mdortch@potts-law.com
    **MARYSSA J. SIMPSON**
    State Bar No. 24088414
    msimpson@potts-law.com
    2911 Turtle Creek Blvd, Suite 1000
    Dallas, Texas 75219
    Tel: (214) 396-9429
    Fax: (469) 217-8296

16

**MICHELLE SIMPSON TUEGEL**
State Bar No. 24075187
michelle@stfirm.com
3301 Elm St.
Dallas, Texas 75226
Tel: 214.774.9121
Fax: 214-614-9218

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon the following *via CM/ECF* pursuant to the Federal Rules of Civil Procedure on this 15th day of December 2020:

Kimberly F. Williams
kwilliams@lockelord.com
Robin G. Shaughnessy
rshaughnessy@lockelord.com
Locke Lord LLP
2200 Ross Avenue, Ste. 2800
Dallas, Texas 75201

*/s/ Maryssa J. Simpson*
**MARYSSA J. SIMPSON**

17